IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:05-CR-118 |
| | ) | 1:05-CR-119 |
| CORDELL BERRY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, Chief District Judge.

The defendant-inmate, Cordell Berry, has filed a renewed motion for

compassionate release under 18 U.S.C. § 3582(c)(1)(A).  In December 2023, the Court

denied the motion as to the defendant's request for a time-served sentence.  Now before

the Court is Mr. Berry's request for a sentence reduction from 646 months to 298 months.

Two significant changes in the law have resulted in a gross disparity between Mr. Berry's

sentence as imposed and one that would likely be imposed under current law.  Under the

new Sentencing Commission Policy Statement, this gross disparity constitutes an

extraordinary and compelling circumstance.  In light of this extraordinary and compelling

circumstance and after weighing the § 3553(a) factors, the Court, in its discretion, will

grant the motion in part and reduce Mr. Berry's sentence to the middle of the

contemporary guideline range, 314 months.

### I.  Procedural History

In 2006, following a jury trial, Mr. Berry was convicted of two armed bank

robberies and was sentenced to 646 months in prison:  262 months on each armed bank

robbery count, to run concurrently; 84 months on the first § 924(c) count to run consecutively to the armed bank robbery counts; and 300 months on the second § 924(c) count to run consecutively to the armed bank robbery counts and the first § 924(c) count.[1] Doc. 56 at 1–2.[2] This aggregate 646-month sentence included 384 months on "stacked" § 924(c) convictions for brandishing a firearm during the two bank robberies and was statutorily required.[3]

In 2021, after completing 16 years of his sentence, Mr. Berry moved for compassionate release, relying primarily on *United States v. McCoy*.[4] Doc. 127. The Court denied the motion without prejudice to renewal once Mr. Berry had served enough time to bring him within the sentencing range that would currently be applied to his convictions or when changes or developments in the law supported a renewed motion. Doc. 132 at 9–11.

In June 2023, Mr. Berry filed the current motion. Doc. 136. The renewed motion reasserts the same basis as his first motion: the statutory sentencing change for successive § 924(c) charges. *Id.* at 13. He also added an additional claim that changes to the sentencing guidelines for the designation of career offenders constitute extraordinary

---

[1] The bank robbery charges in count one of each indictment merged with the armed bank robbery counts as lesser-included offenses. Doc. 56 at 2.

[2] Unless otherwise indicated, all record citations are to *United States v. Berry*, No. 05-CR-118.

[3] For more details about the procedural history and underlying facts, *see* Doc. 132.

[4] 981 F.3d 271 (4th Cir. 2020) (holding that non-retroactive changes to the § 924(c) penalty scheme may constitute an "extraordinary and compelling" basis for compassionate release for defendants sentenced before the changes).

2

and compelling circumstances. *Id.* at 14–17. The Court denied the motion to the extent Mr. Berry sought a time-served sentence and held the matter in abeyance to see if the Supreme Court would resolve a relevant circuit split about whether non-retroactive statutory changes to the law could constitute extraordinary and compelling circumstances.[5] Doc. 142 at 3–4. It did not.

The probation office has filed an updated supplemental report about Mr. Berry's disciplinary, educational, and work records. Doc. 144. Mr. Berry and the government have filed supplemental briefing. Docs. 143, 145, 146. The Court has considered the entire record.

## II. Crime of Conviction and Sentencing

In early 2005, Mr. Berry robbed two banks, each time brandishing a gun and pointing it at a bank teller. Doc. 95 at ¶ 1.[6] A federal grand jury returned separate indictments against Mr. Berry for the pair of armed robberies. *See* Doc. 1; Indictment,

---

[5] Since the Sentencing Commission amended the policy statement on November 1, 2023, U.S.S.G. § 1B1.13, courts continue to disagree on whether non-retroactive changes in law can constitute extraordinary and compelling circumstances. *Compare United States v. Jean*, 108 F.4th 275, 281–82 (5th Cir. 2024) (holding that non-retroactive changes in law can contribute to a finding of extraordinary and compelling reasons for compassionate release), *and United States v. Pierce*, No. 11-CR-576, 2024 WL 2219739, at *9 (S.D.N.Y. May, 15, 2024) (same), *with United States v. Santmire*, No. 16-CR-20519, 2024 WL 3518638, at *3 (E.D. Mich. July 19, 2024) (stating that non-retroactive changes in law do not factor into the extraordinary and compelling analysis), *and United States v. Taylor*, No. 08-CR-39, 2024 WL 3520358, *5 (S.D. Ind. July 23, 2024) (same). As discussed *infra*, the law in the Fourth Circuit is that non-retroactive changes can be extraordinary and compelling circumstances.

[6] At sentencing, the Court adopted the presentence investigation report without change. Doc. 100 at 1. In its response brief, the government states that Mr. Berry held a gun against a customer's head in one of the robberies. Doc. 139 at 13–14. The government did not provide a citation for that assertion. The Court was unable to locate any support in the presentence report or the factual basis, and the Court will not consider that otherwise relevant fact in its analysis.

*United States v. Berry*, No. 05-CR-119, Doc. 1 (M.D.N.C. Mar. 29, 2005). Before trial, Mr. Berry sent a letter from jail to potential witnesses and asked them to provide false testimony. Doc. 95 at ¶ 11. He was tried on both sets of charges in the same trial in December 2005 and found guilty of two counts of bank robbery, in violation of 18 U.S.C. § 2113(a); two counts of armed bank robbery, in violation of 18 U.S.C. § 2113(d); and two counts of carrying and using, by brandishing, a firearm during the bank robberies, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Doc. 50.

Mr. Berry was subject to the mandatory stacking provisions in § 924(c), as it was then in effect. *See* Doc. 71 at 5, 20; Doc. 56 at 2. These provisions required a minimum sentence of 84 months for the first brandishing conviction and a consecutive sentence of at least 300 months for the second brandishing conviction. *See* Doc. 71 at 20; Doc 95 at ¶ 79. Based on Mr. Berry's previous South Carolina felony convictions for possession with intent to distribute "crack" cocaine and resisting arrest and assaulting an officer, the Court[7] also applied the career offender enhancement in calculating Mr. Berry's guideline range. Doc. 71 at 6, 19–20; Doc. 95 at ¶ 36. This increased his base offense level from 27 to 34. Doc. 95 at ¶¶ 35–36. His guideline range for both armed robberies and the stacked § 924(c) convictions was 646 to 711 months. Doc. 71 at 8; Doc. 100 at 1.

The Court sentenced Mr. Berry to the bottom of the guideline range, 646 months imprisonment. Doc. 56 at 2; Doc. 71 at 20. The Fourth Circuit affirmed his conviction and sentence. *United States v. Berry*, 251 F. App'x 183 (4th Cir. 2007).

---

[7] The sentencing judge has retired, and the case has been reassigned to the undersigned. Docket Entry 05/29/2012.

### III. Compassionate Release Standard

Courts do not have unfettered jurisdiction or discretion to modify criminal sentences. *See United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010) ("The law closely guards the finality of criminal sentences against judicial change of heart.") (cleaned up). A court may modify a sentence only when a provision in the Federal Rules of Criminal Procedure or a statute expressly permits. *See* 18 U.S.C. § 3582(c); *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021). Section 3582(c)(1)(A), often colloquially if somewhat inaccurately called the "compassionate release" provision, is one such statutory provision. *See Jenkins*, 22 F.4th at 169.

For a sentence reduction under § 3582(c)(1)(A) to be appropriate, the movant must satisfy the administrative exhaustion requirement when invoked by the government. *See United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021). Section 3582(c)(1)(A) also requires that extraordinary and compelling reasons merit a reduction in sentence, that the reduction is consistent with any applicable policy statements issued by the Sentencing Commission, U.S.S.G. § 1B1.13, and that the relevant § 3553(a) sentencing factors do not counsel against early release. *See United States v. Mangarella*, 57 F.4th 197, 203 (4th Cir. 2023); *United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). Even if a court finds extraordinary and compelling reasons support release, in its discretion, it may deny a defendant's motion after balancing the applicable § 3553(a) factors. *High*, 997 F.3d at 186.

Effective November 1, 2023, the U.S. Sentencing Commission amended its policy statement to cover motions for sentence reduction filed by defendants and to expand the

list of extraordinary and compelling reasons sufficient to support such a motion under § 3582(c)(1)(A).  U.S.S.G. § 1B1.13.[8]

As is relevant here, the new policy statement authorizes a finding of extraordinary and compelling reasons if:  (1) the defendant is serving an unusually long sentence; (2) the defendant has served at least 10 years of the sentence; and (3) an intervening change in law has produced a "gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed."  U.S.S.G. § 1B1.13(b)(6). In the Fourth Circuit, an intervening change in law can be an extraordinary and compelling circumstance even if it is not retroactive.  *Id.*; *accord United States v. McCoy*, 981 F.3d 271, 287–88 (4th Cir. 2020); *United States v. Davis*, 99 F.4th 647, 658 (4th Cir. 2024) (reaffirming *McCoy* and holding that "[n]onretroactive changes in law remain relevant when a court has to decide when and how to modify a sentence").

### IV. Changes in the Law

Since the Court sentenced Mr. Berry in 2006, there have been two significant and material changes in the law.

### A.  The First Step Act Changes the Law for Stacked § 924(c) Convictions

In 2018, Congress passed the First Step Act, which, among other things, amended § 924(c) so that the 25-year mandatory minimum consecutive sentence for a second or

---

[8] The policy statement supersedes much, but not all, of the case law that developed over the past several years while there was no applicable policy statement.  Some opinions issued during that time frame may provide helpful guidance or discussion on extraordinary and compelling circumstances.  And the cases generally remain relevant to the discussion of § 3553(a) factors, which the new policy statement does not discuss.

subsequent offense applies only if the second offense occurs after the first § 924(c) conviction becomes final. First Step Act of 2018, Pub. L. No. 115-391, § 403(a), 132 Stat. 5194, 5221–22 (2018); *United States v. Jordan*, 952 F.3d 160, 171 (4th Cir. 2020). This statutory change does not apply retroactively. *Jordan*, 952 F.3d at 174.

Mr. Berry committed the crime of violence underlying his second § 924(c) conviction in February 2005, Doc. 95 at ¶ 1, and his first § 924(c) conviction was not final until September 2008, at the earliest, when the appellate mandate issued. Doc. 79. If sentenced under today's laws, Mr. Berry would be subject to a seven-year mandatory minimum sentence on each § 924(c) conviction to run consecutively, in other words, a 14-year mandatory minimum sentence, *see* § 924 (c)(1)(A)(ii), instead of the 32-year mandatory minimum sentence imposed. Doc. 56 at 2.

### B. The Fourth Circuit Modifies Criteria for Career Offender Designation

Under the Sentencing Guidelines, to qualify as a career offender, a defendant must have "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). This designation usually results in a longer guideline range. Over time, in response to developing Supreme Court case law, the Fourth Circuit has narrowed the list of felonies considered to be a "crime of violence" under the guidelines and thus has reduced the bases for designation of career offenders and the resulting guideline enhancement. *See, e.g.*, *United States v. Peterson*, 629 F.3d 432, 438 (4th Cir. 2011) (holding that "a North Carolina conviction for involuntary manslaughter does not serve as a predicate crime of violence for determining whether [a defendant] is a career offender under U.S.S.G. § 4B1.1(a)").

7

When the Court sentenced Mr. Berry, he was subject to the career offender enhancement because his record included South Carolina convictions for two felonies: possession with intent to distribute "crack" cocaine and resisting arrest. Doc. 95 at ¶¶ 36, 44 (drug conviction), 46 (resisting arrest conviction). For the underlying bank robberies, the enhancement increased his base offense level from 27 to 34. *Id.* at ¶¶ 35–36.

In *United States v. Keitt*, 765 F. App'x 882, 886 (4th Cir. 2019), the Fourth Circuit held that a violation of South Carolina's felony resisting arrest offense, S.C. Code Ann. § 16-9-320(B), does not constitute a crime of violence under the Sentencing Guidelines.[9] If Mr. Berry were sentenced today for the same bank robberies, his felony resisting arrest conviction would not count as a crime of violence conviction, and he would not be subject to the career offender enhancement, which here affected both his base offense level, Doc. 95 at ¶ 36, and his criminal history level. *Id.* at ¶ 53. The government concedes that under the non-career offender sentencing guidelines, Mr. Berry's robbery offenses would likely carry a guideline range of 130 to 162 months, Doc. 139 at 13, well below the 262 months imposed for the two bank robberies. Doc. 56 at 2.

Given the two recent changes in law, the government and Mr. Berry agree the Sentencing Guideline range would likely be between 130 and 162 months for the robbery offenses, plus the guideline suggestion of 84 months on each § 924(c) conviction for a

---

[9] Relatedly, in *United States v. Jones*, 914 F.3d 893, 904 (4th Cir. 2019), the court held that a violation of South Carolina's resisting arrest offense is not a violent felony under the Armed Career Criminal Act (ACCA).

total of 168 months on the two § 924(c) crimes, for a total guideline range of 298 to 330 months. Doc. 139 at 13; Doc. 145 at 2.

## V. Relevant Facts

Mr. Berry, now age 48, has served approximately 19 years, or 229 months, of his sentence. Doc. 145 at 11. He remains incarcerated at FCI Pollock, Louisiana. *See Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Aug. 2, 2024). As of now, he is scheduled for release (including credit for good conduct time) on August 1, 2051. *Id.*; Doc. 139 at 4.

Mr. Berry has a long criminal history. At age 18, Mr. Berry was convicted of felony possession with intent to distribute "crack" cocaine. Doc. 95 at ¶ 44. He received a suspended five-year sentence and three years of probation, which was later revoked. *Id*. Four years later, at age 22, he was convicted of felony resisting arrest. *Id*. at ¶ 46. He served a two-year active sentence, followed by three years on probation; he again violated probation and served another year of imprisonment. *Id*. He was in and out of trouble for various misdemeanors, including disorderly conduct, breaking or entering, and harassing phone calls, until he committed the instant offenses in 2005 at age 28. *See id*. at ¶¶ 47–50.

Since his first motion for compassionate release in 2021, Mr. Berry has followed the Bureau of Prisons (BOP) rules, and he has avoided any new disciplinary infractions. Doc. 139 at 2; Doc. 144 at 1. His last infraction occurred more than nine years ago. Doc. 136-4 at 3 (showing last infraction on May 28, 2015); Doc. 144 at 1. Still, before 2016, he committed six infractions while in BOP custody, including for assault and possession

Case 1:05-cr-00118-CCE   Document 147   Filed 10/10/24   Page 9 of 21

of a dangerous weapon.  Doc. 136-4 at 3; Doc. 139-3 at 1–2.  Overcoming some obstacles to access, Mr. Berry has completed six courses, including courses about budgeting, finance, buying real estate, and commercial driving, since his first motion, Doc. 144 at 1, and he is engaging in independent study, including by reading and discussing books on the phone with his children.  Doc. 136 at 20; Doc. 136-6 at 2.

If released, Mr. Berry plans to enroll in the S&H Youth and Adult Services (SHYAS) 120-day inpatient, residential reentry program in Salisbury, North Carolina. Doc. 144 at 2.  SHYAS Executive Director Latanya Hardy verified that she can guarantee placement for Mr. Berry in the program.  *Id.*  Mr. Berry's friends have also offered to provide him with housing and employment should he need it.  Doc. 136-8 at 2–3; Doc. 136-10 at 2.

## VI. Compassionate Release Discussion

### A. Exhaustion

Mr. Berry has exhausted administrative requirements, as the government acknowledges.  Doc. 139 at 4 n.4.  On September 21, 2022, counsel submitted a renewed written reduction-in-sentence request to the warden at FCI Pollock, where Mr. Berry is incarcerated, asking the BOP to move for a reduction of Mr. Berry's sentence.  Doc. 139-2.  The warden denied the request on November 14, 2022.  Doc. 136 at 9.

### B. Extraordinary and Compelling Circumstances

Mr. Berry contends that the severity of his sentence, coupled with its disparity relative to those who are sentenced today, constitutes extraordinary and compelling circumstances that warrant a sentence reduction.  *See id.* at 6–7.  Specifically, he asserts

10

that his "sentence today would be 298 months—less than half of his current 54-year sentence." *Id.* at 16.

The policy statement allows courts to find extraordinary and compelling circumstances based on non-retroactive changes in law when three requirements are satisfied. U.S.S.G. § 1B1.13(b)(6). Mr. Berry has demonstrated all three. First, Mr. Berry is serving an unusually long sentence. The sentencing judge noted that the 646 to 741 months guideline was "a range that I have not seen before" and that he had only imposed an "occasional life sentence." Doc. 71 at 5. And in the experience of the undersigned, a 646-month sentence, which comes out to over fifty years, is "unusually long" for two armed robberies. Second, Mr. Berry has served 19 years of his sentence, almost double the 10-year requirement in the policy statement. Doc. 145 at 11. Third, two intervening changes in law have produced a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed. *See* discussion *supra* at 7–9.

If Mr. Berry were sentenced today, following passage of the First Step Act, he would not be subject to the 25-year mandatory consecutive sentence for second or successive § 924(c) convictions, Doc. 132 at 7, and following *Keitt*, Mr. Berry would not be subject to the career offender enhancement. Doc. 136 at 16. Together, these two changes would produce a likely sentence guideline range of 298 to 330 months. Doc. 139 at 13; Doc. 145 at 2. This is roughly half of the 646-month sentence he received. Doc. 56 at 2. The government acknowledges this estimated difference constitutes a gross disparity. Doc. 139 at 13.

11

The two significant changes in law as well as the length of his sentence constitute extraordinary and compelling circumstances. A sentence reduction is consistent with the requirements of the Commission's policy statement. U.S.S.G. § 1B1.13(b)(6).

### C. § 3553(a) Factors

The existence of extraordinary and compelling reasons is not enough, by itself, to support a sentence reduction. *United States v. Malone*, 57 F.4th 167, 176 (4th Cir. 2023). Courts must still consider whether a sentence reduction is appropriate in light of applicable sentencing factors in § 3553(a). *Id.*

If the Court reduced Mr. Berry's sentences for both the robberies and second § 924(c) convictions to reflect current law, his likely guideline range sentence would be between 298 and 330 months. Even the bottom of this range is nearly six years more than the 19 years he has served to date. Doc. 145 at 11.

Mr. Berry requests that the Court "reduce his sentence to the low-end of today's guidelines range: 298 months." *Id.* at 2. Section 3582(c)(1)(A) authorizes courts to reduce a sentence, including where the court decides not to grant immediate release. *United States v. Curry*, No. 5-CR-282, 2021 WL 2644298, at *6 (M.D.N.C. June 25, 2021) (citing *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) ("18 U.S.C. § 3582(c)(1)(A) in fact speaks of sentence reductions. A district court could, for instance, reduce but not eliminate a defendant's prison sentence.")).[10]

---

[10] Three years ago, this Court denied Mr. Berry's alternative request to reduce his sentence because the change in the law resulting from the First Step Act would have produced a likely sentencing guideline recommendation of 430 months in comparison to his 192 months served.

The § 3553(a) factors support a reduction in sentence to 314 months. The current 646-month sentence, which all parties agree constitutes a gross sentencing disparity, does not advance the statutory sentencing factors overall. Reducing Mr. Berry's sentence to a period within the contemporary guidelines would still reflect the seriousness of these very violent crimes and provide just punishment. It would also meet the statutory goal of reducing unwarranted sentencing disparities.

Since his first motion for compassionate release in 2021, Mr. Berry has avoided any new disciplinary infractions, and his last infraction occurred more than nine years ago. Doc. 144 at 1; Doc. 136-4 at 3. Mr. Berry has also developed a more concrete post-release plan, which includes several months in a supported residential re-entry program, and the non-profit organization and his friends have confirmed their commitment to assist Mr. Berry with his reentry process. Doc. 144 at 2; Doc. 136-8 at 2–3; Doc. 136-9 at 2; Doc. 136-10 at 2. Considering all the factors together, particularly the need to avoid unwarranted sentencing disparities in light of two significant changes in the law, it is appropriate to reduce Mr. Berry's sentence.

For the reasons that follow, a sentence in the middle of the estimated sentencing guideline range, 314 months, accompanied by additional terms of supervised release, is sufficient but not greater than necessary to meet the statutory sentencing goals.

The government is correct that in weighing an appropriate reduction to Mr. Berry's sentence, this Court must consider the § 3553(a) factors, particularly "the violent

---

Doc. 132 at 9. Now, however, there is another material change in the law before the Court, and the policy statement for "unusually long sentences" has taken effect. U.S.S.G. § 1B1.13(b)(6).

nature of [Mr.] Berry's offenses . . . and the fact that he remained undeterred from previous stints in prison for drug-related and violent felonies." Doc. 139 at 13–14. The original sentencing judge did not depart from the guideline range for the two robberies,[11] indicating his view of the seriousness of the crimes. Doc. 132 at 7–8; Doc. 71 at 9, 22 (observing that Mr. Berry's crime was "in the top two of the violent bank robberies that I have seen . . . in the years that I've been on the court," and stating that the sentencing court did not "see any reason to depart below the guidelines or a way to find that the guidelines would be unreasonable in this case"). As the Court noted in response to Mr. Berry's first motion, "[e]ven if a reduction is appropriate, it is very possible a minimum sentence would not be a long enough sentence, given the violence of the bank robberies and other aggravating factors." Doc. 132 at 10.

The sentence at the bottom of the contemporary guideline range that Mr. Berry seeks, or 298 months, Doc. 145 at 2, does not adequately account for the violent nature of his offenses. In the January 19, 2005, robbery, Mr. Berry waived the firearm around and ordered several people in the bank to get on the floor. Doc. 95 at ¶ 4. He pointed the gun directly at one teller while telling her "I'm not playing." *Id.* He drove away in a stolen car. *Id.* A month later, he again entered a bank with a visible handgun and ordered a customer and employees to get on the floor while waiving a gun around. *Id.* at ¶ 5. Nor would a 298-month sentence account for Mr. Berry's long criminal history and his failure

---

[11] Mr. Berry was sentenced a year after the decision in *United States v. Booker*, 543 U.S. 220 (2005), which clarified that the sentencing judge could depart or vary as to these two counts, even if the full ramifications of that decision had not been fleshed out.

14

to take advantage of opportunities on probation.  *See id.* at ¶ 44 (showing revocation of

probation for felony drug crime); *id.* at ¶ 46 (same on felony assault on law enforcement

officer).  He was on probation at the time he committed these bank robberies, *id.* at ¶ 49,

showing ongoing disrespect for the law.

But a sentence at the high-end of the guideline range that the government

proposes, Doc. 139 at 14,[12] does not reflect Mr. Berry's commitment to rehabilitation and

education as well as his improved disciplinary record.  As he has gotten older, now

approaching 50, he has made significant positive strides in prison.  He has worked

steadily, Doc. 144 at 2, and has continued to take advantage of educational courses

offered by the BOP.  *Id.* at 1.  Based on the totality of the record, this Court will reduce

Mr. Berry's sentence to the middle of the estimated contemporary guideline range, which

is 314 months.  With additional terms of supervised release, discussed *infra*, this is

sufficient.

As part of a sentence reduction, courts can impose additional conditions of

supervised release.  § 3582(c)(1)(A).  The Court has reviewed the terms of supervised

release originally imposed, Doc. 56 at 3–4, and finds that modifying and supplementing

those terms is appropriate to protect the public and to support Mr. Berry's rehabilitation.

The Court will update the standard conditions of supervised release to those

currently in use in this district, as attached to this Order.  Each of those requirements is

---

[12] In response to Mr. Berry's supplemental briefing, the government states that a "within-Guidelines sentence is appropriate."  Doc. 146 at 4.

reasonable and appropriate, given Mr. Berry's history and characteristics. They are basic minimum conditions necessary for adequate supervision in his case.

Mr. Berry will face many challenges after serving a long sentence. He had a minimal work history before committing these bank robberies, Doc. 95 at ¶¶ 73–75, and over the last twenty years there have been substantial technological changes that affect daily life. His proposed release plan includes 120 days in an inpatient residential program with twenty-four-hour supervision, life skills training, and assistance with transportation and job searches. Doc. 144 at 2. His willingness to participate in this program is a significant factor in the Court's decision to reduce his sentence and to not go to the high end of the contemporary guideline range. It is appropriate to require that he enter and successfully complete this program as a condition of his supervised release.

Finally, the Court will add a supervised release requirement that Mr. Berry submit to warrantless searches for firearms, controlled substances, stolen goods, and other contraband, in view of the nature of the offense and his criminal history. This will add an additional level of supervision and provide additional protection to the public.

## VII.   Other Matters

The Court does not know how this reduction will affect Mr. Berry's actual release date. It is unlikely to be soon, but against the possibility that is not the case, the Court will stay the effective date of this reduction for 90 days to ensure that Mr. Berry, the Probation Office, and the re-entry program have adequate time to plan for his release. This will increase the likelihood he will be successful on post-release supervision and provide additional protection to the public.

16

Mr. Berry's request for oral argument, Doc. 145 at 2, will be denied. The parties have adequately presented the facts and legal contentions in the materials before the Court, and argument would not aid the decision-making process and would only cause an unnecessary delay.

## VIII. Conclusion

Mr. Berry meets the conditions for a § 3582(c)(1)(A) sentence reduction because there is a gross disparity between the sentence he received in 2006 and the sentence he would likely receive today, which is an extraordinary and compelling circumstance under the applicable policy statement and Fourth Circuit law, and a sentence reduction is consistent with the § 3553(a) factors. His sentence will be reduced to 314 months, with the addition of new supervised release requirements which will facilitate his rehabilitation and protect the public.

It is **ORDERED** that the defendant's motion for compassionate release, Doc. 136, is **GRANTED** in part and **DENIED** in part as follows:

1. The defendant's motion for a sentence reduction, Doc. 136, is **GRANTED**, and his sentence is reduced to 314 months total (146 months on Count 2 in 05-CR-118-1 and 05-CR-119-1 to run concurrently; followed by 84 months as to Count 3 in 05-CR-118-1 to run consecutively; followed by 84 months under Count 3 in 05-CR-119-1 to run consecutively);

2. The effective date of this sentence reduction is stayed for 90 days from entry of this Order;

17

3. Upon release, the defendant Cordell Berry **SHALL COMPLY** with the following terms of supervised release:

   a. The conditions of supervised release imposed in the original judgment at Doc. 56;

   b. The standard conditions of supervised release now in effect in the U.S. District Court for the Middle District of North Carolina, attached to this Order;

   c. The defendant **SHALL** cooperatively participate in and successfully complete the S&H Youth and Adult Services 120-day inpatient residential program and follow-up after care program;

   d. The defendant **SHALL** submit his person, residence, office, vehicle, or any property under his control to warrantless searches for firearms, controlled substances, stolen goods, and other contraband. The searches shall be conducted by a United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of supervised release. Failure to submit to such a search may be grounds for revocation. The defendant shall warn any residents that the premises may be subject to searches; and

4. The defendant's request for oral argument is **DENIED**.

   This the 10th day of October, 2024.

   _____
   UNITED STATES DISTRICT JUDGE

**ATTACHMENT I**

DEFENDANT:     CORDELL BERRY
CASE NUMBER:   1:05CR118-1

**MANDATORY CONDITIONS**

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

   ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse.

4. ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution.
5. ☒ You must cooperate in the collection of DNA as directed by the probation officer.
6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq*.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense.
7. ☐ You must participate in an approved program for domestic violence.

You must comply with the standard conditions that have been adopted by this court as well as any other conditions on the attached page.

DEFENDANT:     CORDELL BERRY
CASE NUMBER:   1:05CR118-1

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the
following standard conditions of supervision.  These conditions
are imposed because they establish the basic expectations for your
behavior while on supervision and identify the minimum tools needed
by probation officers to keep informed, report to the court about,
and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal
   judicial district where you are authorized to reside within
   72 hours of your release from imprisonment, unless the
   probation officer instructs you to report to a different
   probation office or within a different time frame.
2. After initially reporting to the probation office, you will
   receive instructions from the court or the probation officer
   about how and when you must report to the probation officer,
   and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district
   where you are authorized to reside without first getting
   permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your
   probation officer.
5. You must live at a place approved by the probation officer.
   If you plan to change where you live or anything about your
   living arrangements (such as the people you live with), you
   must notify the probation officer at least ten (10) days
   before the change.  If notifying the probation officer in
   advance is not possible due to unanticipated circumstances,
   you must notify the probation officer within 72 hours of
   becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time
   at your home or elsewhere, and you must permit the probation
   officer to take any items prohibited by the conditions of
   your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a
   lawful type of employment, unless the probation officer
   excuses you from doing so.  If you do not have full-time
   employment you must try to find full-time employment, unless
   the probation officer excuses you from doing so.  If you plan

to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least ten (10) days before the change. If notifying the probation officer at least ten (10) days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).

11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

13. You must follow the instructions of the probation officer related to the conditions of supervision.


## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see Overview of Probation and Supervised Release Conditions, available at www.uscourts.gov.


Defendant's Signature _____ Date _____